1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

ERIC JACOBSON,

9                          Petitioner,

10        v.

11   CHERYL STRANGE, et al.,

12                          Respondents.

CASE NO. 3:23-cv-05330-MJP-BAT

**REPORT AND
RECOMMENDATION**

13          In 2016, petitioner Eric Jacobson was convicted in Pierce County Superior Court case

14   number 15-1-05049-6 for count 1, attempted rape of a child in the first degree, and count 2,

15   attempted commercial sexual abuse of a minor. Dkt. 22-1 (State Court Record, hereinafter

16   "SCR"), Exh. 1, at 1.[1] Petitioner seeks 28 U.S.C. § 2254 habeas relief based on **eight grounds**:

17   (**1**) trial counsel provided ineffective assistance by not presenting to and discussing with

18   petitioner a plea offer that would have resulted in a reduced sentence and failing to explain that

19   he faced a possible life sentence if convicted as charged; (**2**) the prosecutor committed

20   misconduct throughout the trial; (**3**) there was insufficient evidence to support the conviction for

21   attempted commercial sex abuse of a minor; (**4**) denial of the right to jury unanimity as to the

22

23

---

[1] The Court cites to the page numbers stamped at the bottom of each exhibit rather than to each document's internal pagination.

REPORT AND RECOMMENDATION - 1

means of the crime; (**5**) there was insufficient evidence to support the conviction for attempted rape of a child; (**6**) outrageous police conduct leading to his arrest violated due process; (**7**) the community custody condition prohibiting the use of the internet and email without permission is overbroad; and (**8**) the community custody condition prohibiting use of the internet except for employment purposes and allowing for random searches of his devices is overbroad. Dkt. 1-1, at 26–29.[2]

The Court has reviewed the parties' pleadings, the submitted state court record, and the balance of the record. The Court finds petitioner's **Grounds 1, 2, and 6** lack merit and that **Grounds 3, 4, 5, 7, and 8** are procedurally defaulted for federal habeas purposes as not fully exhausted and now procedurally barred in state court. The Court recommends: (1) petitioner's request for an evidentiary hearing be **DENIED**; (2) the § 2254 habeas petition be **DENIED,** and the case be **DISMISSED** with prejudice; and (3) if this recommendation is adopted, the issuance of a certificate of appealability ("COA") be **DENIED**.

## BACKGROUND

Petitioner was convicted and sentenced in 2016. On direct appeal, the Washington State Court of Appeals upheld his conviction and sentence and summarized underlying facts as follows:

> The Washington State Patrol Missing and Exploited Children's Task Force (Task Force) investigates sex crimes against children, and the majority of the Task Force's investigations involve the Internet. Detective Sergeant Carlos Rodriguez manages the Task Force and oversees its undercover operations. In December 2015, the Task Force conducted an undercover operation in Pierce County. As part of the undercover operation, the Task Force posted ads on the "Casual Encounters" section of Craigslist,[1] posing either as children seeking sex or parents seeking for others to have sexual

---

[2] For reasons of legibility, the Court cites to the page numbers in the proposed petition at Docket Number 1-1 that is also officially filed at Docket Number 7.

contact with their children. 1 Verbatim Report of Proceedings (VRP) 140.

On December 14, 2015, Sergeant Rodriguez posted an ad on the Casual Encounters section, posing as Kristl, a single mother with three minor children. The ad was entitled "young family fun, no RP lets meet" and read "looking for a crazy fun time. only serious need respond. no solicitations. single mom with 2 daus and 1 son." Ex. 1. Soon after, Kristl received an email response from "John Tepinen," stating that he was interested in "some play with one or both of [Kristl's] daughters." Ex. 2, at 1.

Kristl and John began exchanging text messages. Kristl stated that her daughters were "11 nearly 12 and 8." Ex. 4, at 1. John stated that he was interested in Kristl's older daughter and asked for several pictures of her. Sergeant Rodriguez obtained photographs from State Trooper Anna Gasser that were taken at the time she was approximately 16 years old and sent the photographs to John. Trooper Gasser portrayed Lisa, Kristl's 11–year–old daughter, throughout the undercover operation. John then asked if Kristl would send a picture of herself. United States Postal Inspection Service Inspector Samantha Knoll portrayed Kristl throughout the undercover operation. John and Kristl then exchanged pictures of each other.

The next day, John stated, "I believed we were talking about Lisa being ready to go all the way, and if she is and you are comfortable with that then I would like to help with that." Ex. 4, at 5. Kristl asked if John was okay with bringing gifts and stated that "roses are always good, she likes gift cards, tracfone minutes for her phone, stuff like that." Ex. 4, at 7. John responded in the affirmative. John then stated he was interested in oral sex with Lisa. Later that day, John spoke on the phone with both Kristl and Lisa.

Kristl and John arranged to meet the following day at a gas station. Kristl asked that John bring condoms, lubricant, and candy to meet Lisa. John requested that Kristl bring Lisa to the gas station so that he could see that Kristl and Lisa were real people. Then, the following exchange took place:

> [KRISTL]: no way. sorry hun. this is too risky for us.
> [nevermind] then i have a system and im sticking to it.

REPORT AND RECOMMENDATION - 3

[JOHN]: I'm sure you fill up at that station all the time ... you have to respect that I need to feel safe too ... I certainly respect that you do ....

[KRISTL]: so have a great life. like i said. i have a system and it has kept me out of trouble. i will not change.

[JOHN]: Ok.

[KRISTL]: so that means no go right?

....

[JOHN]: I just drove by the address you gave me for the [gas station], and you gave me the address to a home residential neighborhood. So sorry, this is all seeming to be something it's really not.

....

[KRISTL]: im done with you sorry to mich hassle if you change your mind you know what to do

[JOHN]: They wind up having time tomorrow during the day, may I message you? Would you be available daytime tomorrow? ...

[KRISTL]: no way. yo know what the deal is i will find someone else

[JOHN]: Ok.

[KRISTL]: im [upset] with you [now] i have to tell her you arent coming. I [shouldn't] have let her [talk] to you

[JOHN]: Ugh ... I feel bad. Would there be any harm in me coming over tonight still?

....

[KRISTL]: are you still good with gifts? ... what did [you] have in mind ....

[JOHN]: A gift card, that can be used for any purpose.

Ex. 4, at 10–14.

REPORT AND RECOMMENDATION - 4

1

2

3

4

5

6

7

> John notified Kristl that he was at the agreed upon gas station in a
> silver sport-utility vehicle (SUV). Kristl then provided the address
> for the undercover operation's "trap house." Soon after, law
> enforcement initiated a traffic stop of the silver SUV. Law
> enforcement identified Jacobson as the driver of the vehicle and
> placed him under arrest. Pursuant to a search incident to arrest, law
> enforcement located condoms, lubricant, and candy on Jacobson's
> person. Law enforcement also located a cell phone in the silver
> SUV and verified that the cell phone belonged to Jacobson and
> was the same cell phone number John had used to contact Kristl.
> The State subsequently charged Jacobson with one count of
> attempted first degree rape of a child and one count of attempted
> commercial sexual abuse of a minor.

8    *State v. Jacobson*, 2018 WL 2215888, at *1–*2 (Wash. Ct. App. May 15, 2018) (footnotes

9    omitted) *also available at* SCR, Exh. 2 *and at* 3 Wash. App. 2d 1058. Petitioner then sought

10   review by the Washington State Supreme Court, asserting three grounds for relief that are here

11   raised as **Ground 2** (prosecutorial misconduct), **Grounds 3 and 5** (insufficiency of the evidence

12   for the two crimes of conviction); arguably **Ground 4** (denial of the right to jury unanimity as to

13   the means of the crime); and **Ground 6** (due process violation for outrageous government

14   conduct). *Compare* Dkt. 1-1, at 26–29 *with* SCR, Exh. 11, at 6–7. Although the state appellate

15   court addressed **Grounds 7 and 8** (community custody conditions), petitioner did not raise those

16   issues before the state supreme court. *See generally* SCR, Exh. 11. The Washington Supreme

17   Court denied review without comment on November 28, 2018. SCR, Exh. 13. The state court of

18   appeals issued the mandate on December 17, 2018. SCR, Exh. 14.

19       In August 2019, petitioner filed a timely personal restraint petition. SCR, Exh. 15. The

20   Washington Court of Appeals transferred the matter to the superior court for an evidentiary

21   hearing on the question of ineffective assistance of trial counsel, specifically about whether

22   counsel advised petitioner of the potential for a life sentence if convicted as charged and whether

23   counsel communicated a July 2016 plea offer to him. SCR, Exh. 19, at 2–3. The superior court

1   conducted an evidentiary hearing in which petitioner and trial counsel testified, SCR, Exh. 20,

2   and entered written findings of fact determining that trial counsel's testimony was credible,

3   petitioner's testimony was not credible, and that trial counsel had advised petitioner of a

4   potential life sentence and had communicated the July 2016 plea offer, SCR, Exh. 21. The

5   Washington Court of Appeals subsequently denied the personal restraint petition. *In re Jacobson*,

6   2022 WL 4355033 (Wash. Ct. App. Sept. 20, 2022) *also available at* SCR, Exh. 24 *and at* 23

7   Wash. App. 2d 1026. Petitioner sought discretionary review by the state supreme court,

8   presenting four grounds for relief. SCR, Exh. 25, at 6–7. These four grounds were presented as

9   federal claims to the state supreme court and, to the extent they are asserted in the current federal

10  habeas petition, appear as federal **Ground 1** (ineffective assistance of counsel for not

11  communicating a plea offer and not informing him of sentencing consequences of a conviction).

12  *Compare* SCR, Exh. 25 at 6–7 *with* Dkt. 1-1, at 24. The Washington Supreme Court denied

13  review, SCR, Exh. 26, and also denied a subsequent motion to modify, SCR, Exh. 28. The state

14  issued a certificate of finality on February 21, 2023. SCR, Exh. 29.

15      Petitioner filed a timely § 2254 habeas petition in April 2023. Dkts. 1, 1-1, 7; 28 U.S.C.

16  § 2244(d).

17                              **EVIDENTIARY HEARING**

18      Petitioner requests an evidentiary hearing. As discussed below, the Court finds that for all

19  claims examined on the merits the state courts' adjudication was neither contrary to or an

20  unreasonable application of clearly established Supreme Court law nor based upon an

21  unreasonable determination of the facts given the record. Given these circumstances, the Court is

22  barred from conducting an evidentiary hearing to further develop the facts on petitioner's claims.

23  *Cullen v. Pinholster*, 563 U.S. 170, 185 ("If a claim has been adjudicated on the merits by a state

1   court, a federal habeas petitioner must overcome the limitations of § 2254(d)(1) on the record

2   that was before the state court.")³; s*ee also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013)

3   ("Although the Supreme Court has declined to decide whether a district court may ever choose to

4   hold an evidentiary hearing before it determines that § 2254(d) has been satisfied . . . an

5   evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes

6   habeas relief.") (internal quotation marks and citation omitted).

7         In sum, to determine if relief is available under 28 U.S.C. § 2254(d)(1) or (2), the Court's

8   review is limited to the record before the state court. *Pinholster*, 563 U.S. at 185; *Gulbrandson*,

9   738 F.3d at 993 n.6 (9th Cir. 2013) A hearing should not be held if the allegations would not

10  entitle petitioner to relief under 28 U.S.C. § 2254(d). *Schriro v. Landrigan,* 550 U.S.465, 474

11  (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise

12  precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 464–

13  65.

14        Here, as discussed below, the Court concludes petitioner is not entitled to relief and the

15  fully exhausted habeas claims may be resolved by review of the existing record without further

16  discovery or supplementation of evidence presented for the first time; accordingly, no

17  evidentiary hearing is required because petitioner's allegations do not entitle him to habeas relief.

18  Petitioner's request for evidentiary hearing and any discovery should therefore be denied. *See*

19  *also Kemp v. Ryan*, 638 F.3d 1245, 1269 (9th Cir. 2011) (when a habeas petitioner is not entitled

---

³ The *Pinholster* limitation also applies to claims brought under § 2254(d)(2). *See Gulbrandson v. Ryan*, 738 F.3d 976, 993 n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well. *See* § 2254(d)(2) (allowing for habeas relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.") (emphasis added); *Pinholster*, 563 U.S. at 185 n. 7 (comparing (d)(1) to (d)(2) and stating that (d)(1) "also is plainly limited to the state-court record.").

1  to an evidentiary hearing, then the petitioner's request for discovery is futile, and the court does

2  not abuse its discretion in denying it.).

3                                  **HABEAS REVIEW STANDARD**

4          A federal court may not grant habeas relief unless the state court decision: "(1) was

5  contrary to clearly established federal law as determined by the Supreme Court, (2) involved an

6  unreasonable application of such law, or (3) . . . was based on an unreasonable determination of

7  the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243,

8  1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

9          A state court's decision is contrary to clearly established federal law if it contradicts the

10  law set forth by the United States Supreme Court or reaches a result different than that reached

11  by the Supreme Court on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S.

12  362, 405–06 (2000). A state court's decision is an unreasonable application of clearly established

13  federal law when the state court identifies the correct legal rule but applies it to a new set of facts

14  in a way that is objectively unreasonable. *See id*. at 407. "Clearly established federal law means

15  the governing legal principle or principles set forth by the Supreme Court at the time the state

16  court renders its decision." *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012) (citation

17  omitted). A court's determination of clearly established law rests on a Supreme Court holding,

18  not on circuit decisions. *See Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (A Supreme

19  Court case must have "squarely address[ed]" a certain issue and given a "clear answer" regarding

20  the applicable legal rule to create "clearly established federal law.").

21          Turning to habeas relief based upon a claim the state court unreasonably determined the

22  facts, "a federal court may not second-guess a state court's fact-finding process unless, after

23  review of the state-court record, it determines that the state court was not merely wrong, but

REPORT AND RECOMMENDATION - 8

actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El I*, 537 U.S. 322, 340 (2010) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Additionally, state-court factual findings are presumed correct. This is a presumption the petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187, 2199–2200 (2015) (quotation and citation omitted). Consequently, even if reasonable minds reviewing the record might disagree about a state court's factual determination, a federal habeas court cannot supersede the trial court's determination." *Id.* at 2201.

In considering a habeas petition, a federal court reviews the "last reasoned decision" from the state court. Where the final state court decision contains no reasoning, the court looks to the last decision from the state court that provides a reasoned explanation of the issue. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Where no state court decision articulates its underlying reasoning, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. . .." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state courts fail to provide reasoning for its decisions, a federal court must independently review the record and ascertain whether the state court's decision was objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (citation and internal quotation marks omitted)." "Crucially, this is not a de novo review of the constitutional question. Rather, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citations and internal quotation marks omitted).

Finally, a federal court's review of a habeas claim is limited to the facts before the state court and the petitioner is not automatically entitled to an evidentiary hearing in federal court.

1    *See Pinholster*, 563 U.S. at 185. "An evidentiary hearing may be appropriate after *Pinholster*

2    only if the district court first determines that the state court made an unreasonable application of

3    federal law or made an unreasonable determination of facts based on the record before it." *Grecu*

4    *v. Evans*, No. 07-0780-EMC, 2014 WL 5395783, at *17 (N.D. Cal. Oct. 22, 2014) (unreported).

## DISCUSSION

### I.    Procedurally Defaulted Claims

Before seeking federal habeas relief, a state prisoner must exhaust available state

remedies, thereby giving the State the opportunity to pass upon and correct violations of its

prisoners' federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To provide the State with the

necessary opportunity, the prisoner must "fairly present" his or her claim in each appropriate

state court. *Id.* When discretionary state supreme court review is part of the appellate process,

whether on direct review or during the judicial postconviction process, "fair presentation" means

that a petitioner must present all claims to the highest court in order to permit federal habeas

review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Casey v. Moore*, 386 F.3d, 896, 916

(9th Cir. 2004). It is not enough that all the facts necessary to support the federal claim were

before the state courts, or that a somewhat similar state law claim was made. In order to exhaust

the federal habeas claim, a petitioner must have fairly presented to the state courts the substance

of his or her *federal* habeas claim. *Anderson v. Harless*, 459 U.S. 4, 6–7 (1982). Vague

references to broad constitutional principles such as due process, equal protection, and a fair trial

do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996). "[A]

claim for relief in habeas corpus must include reference to a specific federal constitutional

guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Id.* at 163.

1

### A.    Grounds 3, 4, and 5 Are Procedurally Defaulted

2

In his federal habeas petition, petitioner alleges insufficiency of the evidence in Grounds

3   3 and 5, with **Ground 3** asserting insufficient evidence to support the conviction for attempted

4   commercial sex abuse of a minor, and **Ground 5** asserting insufficient evidence to support the

5   conviction for attempted rape of a child; and in **Ground 4** petitioner alleges that his

6   constitutional "right to a unanimous jury was violated because alternative means were presented

7   to [the] jury without requiring unanimity as to the means." Dkt. 1-1, at 25. The Court finds that

8   Grounds 3, 4, and 5 were not fairly presented as federal claims to the state supreme court and are

9   now procedurally defaulted for federal habeas purposes.

10

In his petition for review to the Washington Supreme Court on direct appeal, petitioner

11   presented Grounds 3, 4, and 5 as claims of insufficiency of the evidence: Grounds 3 and 5

12   alleged insufficiency of evidence as to the two charged crimes; and Ground 4 alleged

13   insufficiency of evidence to prove an alternative means crime, but *not* with respect to the

14   unanimity of the verdict regarding the means (as is presented in the federal habeas petition).

15   The statements in his state supreme court briefing that implicate Ground 4 are that "the

16   [Washington Supreme] Court has not determined whether the [state] solicitation statute is an

17   alternative means crime," SCR, Exh. 11 at 7, and "the [Washington Supreme] Court should also

18   accept review to determine whether commercial sexual abuse of a minor is an alternative means

19   crime. RAP 13.4(b)(4); Op. Br. 55–57. The Court of Appeals 'assume[d] without deciding that

20   this is true,'" SCR, Exh. 11 at 26–27. There is no reference in the brief to petitioner's right to a

21   unanimous jury verdict as to the means of the crime of attempted commercial sexual abuse of a

22   minor. There are, therefore, two problems with the manner in which Ground 4 was presented to

23   the state supreme court. First, it appears that the federal constitutional right to a unanimous jury

1  verdict as to the exact means of the crime was not presented to the Washington Supreme Court.

2  Second, even if it was presumed to have been presented, it was stated entirely as a question of

3  state law referring only to how the state courts have defined a state statute with reference to a

4  rule of state appellate procedure. *See* SCR, Exh. 11 at 7, 26–27. As seeming confirmation of this,

5  the Washington Court of Appeals treated petitioner's argument entirely as a matter of state law,

6  analyzing the language of the state statue and assuming without deciding that attempted

7  commercial sexual abuse of a minor was an alternative means crime. *See Jacobson*, 2018 WL

8  2215888, at *22.

9       Similarly, Grounds 3 and 5 regarding the insufficiency of the evidence as to the two

10  charged crimes is presented entirely as a state-law matter and with citation only to state cases

11  that do not discuss federal constitutional law regarding insufficiency of the evidence. *See* SCR,

12  Exh. 11 at 25–26 (citing, among other state-law sources, state statutes, the legislative history of a

13  state statute, the state court of appeals decision on the matter, the state rule of appellate

14  procedure, and the cases *State v. Grundy*, 886 P.2d 208 (Wash. Ct. App. 1994); *State v.*

15  *Townsend*, 57 P.3d 255 (Wash. 2002); *State v. Sivins*, 155 P.3d 982 (Wash. Ct. App. 2007); and

16  *State v. Wilson*, 242 P.3d 19 (Wash. Ct. App. 2010)). Nowhere in the brief to the state supreme

17  court did petitioner refer to federal law or the federal constitution with respect to Grounds 3, 4,

18  and 5. Instead, citations to federal constitutional law are made only with respect to Ground 2

19  (prosecutorial misconduct), and to Ground 6 (outrageous government conduct). *See* SCR, Exh.

20  11 at 8, 10.

21       Petitioner did not fairly present Grounds 3, 4, and 5 as federal claims to the state courts

22  on direct appeal due to failing to present them as federal claims to the state supreme court.

23  Though he did not fairly present Grounds 3, 4, and 5 as violations of federal law to the

Washington state courts, petitioner has exhausted his state-court remedies on these questions for federal habeas purposes. This is because petitioner is procedurally barred from pursuing remedies in state court by independent and adequate state grounds: Washington's one-year statute of limitations for collateral attacks, RCW § 10.73.090, and the state law against second or successive collateral attacks absent good cause, RCW § 10.73.140; *see* R.A.P. 16.4(d). Petitioner's criminal conviction became final for state-law purposes in December 2018 and he is now time-barred from filing a personal restraint petition. The Ninth Circuit has held that Washington's time-related procedural statute on personal restraint petitions, RCW § 10.73.090, provides an independent and adequate state ground to bar federal review. *See Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000). In addition, under Washington law, the state courts will not consider a second or successive personal restraint petition absent good cause showing why the issues were not raised in the prior personal restraint petition and, moreover, should dismiss outright successive petitions that are also untimely. RCW § 10.73.140; *see In re Bell*, 387 P.3d at 722. Under such circumstances, petitioner's Grounds 3, 4, and 5 are procedurally barred from being resolved in state court and are procedurally defaulted for federal habeas purposes unless petitioner can demonstrate (1) cause for his default in state court and actual prejudice from the alleged error, or (2) the failure to review would result in a miscarriage of justice, such as a conviction standing despite actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner argues that he should be permitted to raise any issues not fairly presented to the state courts because any failure to do can be attributed to ineffective assistance of counsel during direct appeal. Dkt. 23, at 12–13. This conclusory argument is unpersuasive. First, petitioner is raising for the first time in a reply brief a new basis for federal habeas relief. Second, nothing in the record suggests either cause and prejudice, or that the failure to review Grounds 3, 4, and 5

1    (or other procedurally defaulted claims) would result in a miscarriage of justice.

2          Moreover, even if Ground 4 had been presented to the state courts as a federal claim in its

3    current form, and the Court presumed that Ground 4 had merit, it would still require the

4    retroactive application of a new rule. Consequently, *Teague v. Lane*, 489 U.S. 288 (1989) bars

5    relief for Ground 4, as does the § 2254(d) requirement that the right be clearly established by

6    Supreme Court precedent at the time the state-court judgment became final for federal habeas

7    purposes. In *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020), the Supreme Court established

8    for the first time that a state jury, not just a federal jury, must render a unanimous verdict to

9    convict a defendant. This new rule of criminal procedure in *Ramos* does not, however, apply

10   retroactively. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1551 (2021). Prior to *Ramos*, the Supreme

11   Court had not established a requirement of jury unanimity applicable in state court. *See, e.g.*,

12   *Schad v. Arizona*, 501 U.S. 624, 632 (1991) ("[T]here is no general requirement that the jury

13   reach agreement on the preliminary factual issues which underlie the verdict.") (quoting *McKoy*

14   *v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) (internal quotation

15   marks omitted). Moreover, even though *Ramos* held that a state verdict must be unanimous, the

16   Supreme Court has yet to hold that the jury must be unanimous as to the means of the crime, the

17   proposition that petitioner asserts here. *See, e.g.*, *Richardson v. United States*, 526 U.S. 813, 817

18   (1999) ("The question before us arises because a federal jury need not always decide

19   unanimously which of several possible sets of underlying brute facts make up a particular

20   element, say, which of several possible means the defendant used to commit an element of the

21   crime."). For purposes of *Teague*, petitioner's convictions became final in February 2019, which

22   was after the state supreme court denied review on direct appeal in November 2018 plus the 90

23   days permitted to petition for a writ of certiorari before the United States Supreme Court. *See*

REPORT AND RECOMMENDATION - 14

1    *Beard v. Banks*, 542 U.S. 406, 411 (2004) ("State convictions are final for purposes of

2    retroactivity analysis when the availability of direct appeal to the state courts has been exhausted

3    and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has

4    been finally denied.").

5    　　　　The Court finds that petitioner's Grounds 3, 4, and 5 are procedurally defaulted and

6    petitioner has not demonstrated cause and prejudice or manifest injustice that would justify

7    excusing that default. In addition, alternatively, Ground 4 is barred by *Teague* from retroactive

8    application of a new rule, and the state court's decision on Ground 4 is not contrary to, or an

9    unreasonable application of, established Supreme Court authority.

10    　　　　**B.　　Ground 7 and 8 Are Procedurally Defaulted**

11    　　　　Grounds 7 and 8 (sentencing restrictions) were omitted from the brief before the

12    Washington Supreme Court and cannot be considered fairly presented to all levels of the state

13    courts. *Compare* SCR, Exh. 3 at 72–81 (court of appeals brief arguing that overbroad conditions

14    restricting internet access violated the First Amendment) *with* SCR, Exh. 11 at 6–7 (supreme

15    court brief setting forth issues presented for review). The Court finds petitioner's Grounds 7 and

16    8 are procedurally defaulted and petitioner has not demonstrated cause and prejudice or manifest

17    injustice that might excuse the default.

18    　　　　**C.　　Grounds 1, 2, and 6 Have Been Fairly Presented**

19    　　　　Respondents concede **Grounds 1 and 2** have been fully exhausted and the Court finds

20    that those grounds have been fairly presented to the state courts. Dkt. 21, at 8; *see* SCR, Exh. 11

21    at 6–7; SCR, Exh. 20 at 6. Respondents argue, however, that in addition to Grounds 3, 4, 5, 7,

22    and 8 being procedurally defaulted as discussed *supra*, petitioner failed to fairly present as a

23    federal claim **Ground 6** (outrageous government conduct). Dkt. 21, at 12–14. The Court

1  disagrees with respondents' assertion Ground 6 was not fairly presented as a federal claim to the

2  state supreme court.

3       The Ninth Circuit holds "for purposes of exhaustion, a citation to a state case analyzing a

4  federal constitutional issue serves the same purpose as a citation to a federal case analyzing such

5  an issue." *Peterson v. Lambert*, 319 F.3d 1153, 1158 (9th Cir. 2003). In the brief before the state

6  supreme court on direct appeal, petitioner referred to the Ground 6 claim of outrageous

7  government conduct as a violation of federal due process. SCR, Exh. 11 at 3. As an illustration

8  of his argument, petitioner cited three state cases that evaluated outrageous government conduct

9  based on the framework of the federal constitution. *See* SCR, Exh. 11 at 3–4 (citing *State v.*

10 *Lively*, 921 P.2d 1035 (Wash. 1996); *State v. Valentine*, 935 P.2d 1294 (Wash. 1997*)*; and *State*

11 *v. Athan*, 158 P.3d 27 (Wash. 2007)). Petitioner fairly presented Ground 6 as a federal claim to

12 the state courts by citing to the federal constitution and state cases that applied federal

13 constitutional standards.

14      The Court finds Ground 6 was fairly presented to the state courts and will therefore

15 review the ground as a federal habeas claim for relief.

16 **II.     Merits of Fully Exhausted Grounds for Relief**

17      The remaining, fully exhausted claims to be examined on the merits are **Ground 1**

18 (ineffective assistance of counsel regarding a plea offer and communicating the consequences of

19 being convicted as charged); **Ground 2** (prosecutorial misconduct); and **Ground 6** (outrageous

20 government conduct in violation of due process). Ground 1 was evaluated by the Washington

21 Court of Appeals during the proceedings on the personal restraint petition and included a remand

22 to the superior court for an evidentiary hearing that took testimony from petitioner and his trial

23 counsel and resulted in factual findings. *See* SCR, Exhs. 20, 21, 24. Grounds 2 and 6 were

evaluated in detail by the Washington Court of Appeals on direct appeal. *State v. Jacobson*, 2018 WL 2215888. The Court finds that petitioner has failed to demonstrate that the state court adjudication of Grounds 1, 2, and 6 was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the record before the state court.

### A. Ground 1: Ineffective Assistance of Counsel Regarding Plea Offer and Sentencing Consequences

In Ground 1, petitioner contends his "Due Process rights were violated when his trial counsel provided ineffective assistance of counsel with respect to failing to present and discuss a plea bargain emailed beginning July 14, 2016 which would have reduced Petitioner['s] prison sentence and eliminated the life max and lifetime community custody provisions and failing to inform Petitioner of his sentencing consequences if he proceeded to trial and lost." Dkt. 1-1, at 17; *see* Dkt. 1-1, at 47–54. Ground 1 lacks merit.

To demonstrate ineffective assistance of counsel a defendant must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness, and (2) this deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). During habeas review, a federal court is doubly deferential to the state court's review of ineffective assistance of counsel: "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrison v. Richter*, 562 U.S. 86, 101 (2011). Thus, petitioner must demonstrate that it was "necessarily unreasonable" for the state court of appeals to conclude that he had not overcome the strong presumption of counsel's competence. *Cullen v. Pinholster*, 563 U.S. at 190.

1    During proceedings on his personal restraint petition, the Court of Appeals remanded to

2  the superior court to hold an evidentiary hearing:

> In August 2019 Jacobson filed a personal restraint petition arguing
> that he was entitled to a new trial based on ineffective assistance of
> counsel. Jacobson argued that his trial counsel never
> communicated to him that in July 2016 the State offered him a plea
> deal with reduced charges and a joint sentencing recommendation
> of 80 months of confinement. He also argued that his trial counsel
> never informed him that he faced a potential life sentence if he
> went to trial and was convicted. We ordered the trial court to
> conduct an evidentiary hearing on Jacobson's claims.
>
> At the evidentiary hearing, Travis Currie—Jacobson's trial
> counsel—and Jacobson testified. The trial court found that Currie
> has been defending persons charged with felonies since 2002 and
> is experienced in "Net Nanny" cases including cases involving
> Class A felony sex offenses that carry a statutory maximum of life
> in prison and an "indeterminate" or "determinate-plus" standard
> range of a minimum term "to life" in prison. Clerk's Papers (CP) at
> 2. The trial court also found that Currie's regular practice is to
> communicate every offer he receives from the State to every
> defendant he represents. The trial court found that whenever Currie
> represents a person charged with a Class A felony sex offense, he
> informs the defendant that the statutory maximum term is life in
> prison and a conviction would carry an "indeterminate" or
> "determine-plus" sentence that could mean the defendant might
> never be released from prison. CP at 3.
>
> Currie recalled having a conversation with Jacobson before his
> trial during which Jacobson maintained his innocence and stated he
> would not plead guilty, but Currie could not specifically recall a
> conversation about the State's plea offer. In July 2016, the State
> communicated a plea offer to Currie including a reduction to
> determinate sentences. Currie did not have notes specifically
> referencing discussing the offer with Jacobson, but Currie was
> confident that he did communicate the offer to his client based on
> his established habit and practice of communicating offers. Currie
> testified that he would have recommended Jacobson accept the
> State's offer based on the totality of the circumstances of the case.
>
> The trial court found that Currie not making a counteroffer or
> communicating to the State that the offer was accepted was
> evidence of Jacobson's rejection of the offer as opposed to
> evidence that Currie failed to convey the offer to Jacobson. The

REPORT AND RECOMMENDATION - 18

> trial court found it "a virtual [certainty] that Mr. Currie followed his normal practice and communicated the State's July 2016 offer, despite his understandable lack of specific memory of that." CP at 5.
>
> The trial court found Currie to be a credible witness in the entirety of his testimony.
>
> Jacobson testified at the evidentiary hearing that Currie never told him about any plea offer from the State. Jacobson denied that Currie ever came to the jail to talk to him, denied that Currie called him, and claimed that he did not know about the State's offer until his sentencing hearing following trial. Jacobson also said that he met Currie 10 or 11 times before trial. The trial court found Jacobson's denials unreasonable given the number of times Currie and Jacobson met prior to trial. Jacobson testified that Currie told him he faced 8 to 10 years in prison and never told him about the maximum sentence being life in prison, the lifetime community custody he faced, or anything about the Indeterminate Sentence Review Board. The trial court found these denials to be unreasonable "based on familiarity with Mr. Currie, based on the charges involved here, [and] based on the lack of expressed surprise by defendant when the standard range and statutory maximum were mentioned on the first day of trial." CP at 6.
>
> The trial court found Jacobson to be a not credible witness in the entirety of his testimony, and specifically rejected Jacobson's claim that he never knew about the State's July 2016 offer.
>
> On the central issue, the trial court found that Currie did communicate the plea offer to Jacobson and found that Currie informed Jacobson about the statutory maximum and the potential for an indeterminate sentence of up to life before trial.

*In re Jacobson*, 2022 WL 4355033, at \*1–\*2. The state appellate court then reviewed whether

the facts could support his claim of ineffective assistance of counsel in collateral proceedings by

demonstrating deficient performance and prejudice given that an attorney must discuss the

State's offers and help the defendant to make an informed decision on whether to take a plea

deal, and that prejudice can be shown if the loss of the plea opportunity led to a trial resulting in

conviction on more serious charges or the imposition of a more severe sentence:

REPORT AND RECOMMENDATION - 19

Jacobson contends that his trial counsel never communicated the State's July 2016 plea offer to him. To support his claim, Jacobson points to Currie's inability to recall any specific conversation about the offer and to Jacobson's own insistence that he was never informed. But at the evidentiary hearing, the trial court found Jacobson to be a not credible witness "in the entirety of his testimony," and specifically rejected Jacobson's claim that he never knew about the State's July 2016 offer. CP at 7. Additionally, the trial court found Currie to be a credible witness and found it "a virtual [certainty] that Mr. Currie followed his normal practice and communicated the State's July 2016 offer, despite his understandable lack of specific memory of that." CP at 5.

Jacobson does not assign error to any of the trial court's findings of fact. As such, the trial court's findings of fact are verities on appeal. *State v. Stewart*, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). Moreover, even if we considered Jacobson to have sufficiently assigned error to the trial court's findings, which he has not, we would hold that sufficient evidence supports the trial court's findings. Currie testified that in his decades of experience with these types of cases, he has never failed to communicate a pretrial offer to a client. On the other hand, the only evidence suggesting Currie deviated from his regular practice of communicating plea offers to his clients is Jacobson's self-serving testimony, which the trial court found not credible in its entirety. We do not review credibility determinations. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). Accordingly, Jacobson fails to show that his trial counsel rendered ineffective assistance by failing to communicate the State's July 2016 plea offer.

Jacobson's claim that his trial counsel failed to adequately warn him that he faced a potential life sentence suffers a similar fate. The trial court found that Jacobson's trial counsel informed him of the statutory maximum and the potential of an indeterminate sentence of up to life on the charges before trial. The trial court specifically found Jacobson's contention that his trial counsel told him only that he faced "8 to 10 years" unreasonable based on the court's familiarity with Currie, the charges involved, and the lack of expressed surprise by Jacobson when the standard range and statutory maximum were mentioned on the first day of trial. CP at 6. Jacobson fails to assign error to any of these findings, and therefore they are verities on appeal. *Stewart*, 12 Wn. App. 2d at 240. Accordingly, Jacobson fails to show that his trial counsel

1

2

> rendered ineffective assistance by failing to inform him that he
> faced a maximum sentence of life.

3

*In re Jacobson*, 2022 WL 4355033, at *2–*3. In a two-page ruling denying review, the

4

Washington Supreme Court Deputy Commissioner also noted:

5

6

7

8

9

> [A]s the Court of appeals observed, Jacobson did not assign error
> to any of the superior court's findings, making them verities. *State
> v. Stewart*, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). And
> even if Jacobson adequately challenged the findings, the superior
> court predicated them largely on its determination that Jacobson's
> trial counsel was credible and Jacobson was not. A reviewing court
> does not second-guess credibility determinations. *State v.
> Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). In
> other respects, Jacobson asks this court to reweigh the evidence
> favorable to him. This, too, a reviewing court will not do. *State v.
> Chirinos*, 161 Wn. App. 844, 851, 255 P.3d 809 (2011).

10

SCR, Exh. 26 at 2 (*In re Jacobson*, No. 101336-1 (Wash. Dec. 23, 2022)).

11

12

After an evidentiary hearing, the superior court established that trial counsel had neither

13

failed to communicate the 2016 plea offer nor failed to explain that petitioner faced a possible

14

life sentence if convicted as charged. Petitioner cannot therefore show either trial counsel's

15

deficient performance or resulting prejudice. Petitioner has failed to demonstrate that the

16

Washington Court of Appeals' decision rejecting petitioner's claim of effective assistance of

17

counsel was contrary to, or an unreasonable application of, clearly established federal law as

18

determined by the Supreme Court, or was based on an unreasonable determination of the facts in

19

light of the evidence presented.

20

## B.  Ground 2: Prosecutorial Misconduct

21

In Ground 2, petitioner contends "the prosecutor committed repeated and wide-ranging

22

misconduct, much of which was objected to and which was flagrant and ill intentioned." Dkt. 1-

23

1, at 17; *see* Dkt. 1-1, at 55–71. Ground 2 lacks merit.

REPORT AND RECOMMENDATION - 21

For claims of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*Darden* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is presumed to be harmless unless the error had "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990).

**1.  State Court's Determination that the Prosecutor Did Not Vouch for Witnesses**

Petitioner contends "[t]hroughout the trial and in his arguments to the jury, the prosecutor bolstered the Task Force[']s actions and vouched for the police witnesses' credibility." Dkt. 1-1, at 56. On direct review, the Washington Court of Appeals cited the correct standard for reviewing prosecutorial misconduct then determined that the prosecutor had not vouched for witnesses during the trial:

> A. *Vouching*
>
> Jacobson argues that the prosecutor committed misconduct by vouching for law enforcement witnesses. Specifically, Jacobson argues that the prosecutor improperly vouched by stating that Jacobson, but not law enforcement, had a particular interest in the outcome of his case, the Task Force was successful in protecting children, and the jury must reach a unanimous decision. We disagree.
>
> A prosecutor improperly vouches for a witness by expressing a personal belief in the veracity of a witness or arguing that evidence not presented at trial supports the witness's testimony. *Thorgerson*, 172 Wn.2d at 443. However, it is not improper for a prosecutor to draw inferences from the evidence as to why the jury would want to believe one witness over the other. *Jackson*, 150 Wn. App. at 883. We will not find prejudicial error unless it is clear and

unmistakable that the prosecutor was expressing a personal opinion. 150 Wn. App. at 883.

1. *Comparing Bias of Law Enforcement & Jacobson*

First, Jacobson argues that the prosecutor improperly vouched for law enforcement witnesses by stating that Jacobson, but not law enforcement, had a particular interest in the outcome of his case. We hold that the prosecutor's statements did not constitute vouching.

During closing argument, the prosecutor stated:

> [THE STATE]: I am going to suggest to you—one of the things the judge read you was an instruction that said you can consider any interest, bias or prejudice .... I would suggest that you apply that standard to the defendant particularly. Because if there is anyone who has an interest in the outcome of this case, it's him.

> [JACOBSON]: Objection, Your Honor. Objection to the statement of "particularly to the defendant."

> [THE STATE]: ... I will clarify that.

> THE COURT: Sustained. ...

> [THE STATE]: I am not saying weigh his testimony differently. I am encouraging you, asking you to apply the same standard you applied to [the law enforcement witnesses]. Apply the same exact standard.

> Ask yourself, what interest do they have in the outcome of this case? What bias? What prejudice? You've heard that they have done five or six operations and dealt with hundreds of these people and arrested 60–plus. What interest do they have in this particular case above any other case that they have investigated? What interest does [Jacobson] have? And why does he tell you folks a story that is 180 degrees different from what he said in the undercover capacity of the chats? And why is it completely different than what he told the detective? Why? It's because his testimony was not true.

5 VRP at 798–99. Jacobson did not object.

Taken in context, the prosecutor argued that the jury should infer from the evidence presented at trial that Jacobson was biased because of his personal interest in the case and, therefore, that his testimony was not credible to the extent that it conflicted with law enforcement's testimony. The prosecutor then pointed out that no evidence suggested that law enforcement had a similar personal interest in the case. Moreover, the prosecutor reminded the jury that it should use the exact same standard to weigh the credibility of all the witnesses. As a result, the prosecutor correctly stated the law, argued inferences from the evidence presented at trial, and did not present his personal opinion. Accordingly, Jacobson fails to show that the prosecutor vouched for law enforcement witnesses, and the prosecutor's conduct was not improper. *See Jackson*, 150 Wn. App. at 884–85.

2. *Task Force Protecting Children*

Next, Jacobson argues that the prosecutor improperly vouched for law enforcement witnesses by stating that the Task Force was successful in protecting children. We hold that the prosecutor's statements did not constitute vouching.

The following exchange took place during the prosecutor's direct examination of Sergeant Rodriguez:

> [THE STATE]: What is the purpose in general of the ... Task Force with the State Patrol?
>
> [SERGEANT RODRIGUEZ]: So the purpose is to investigate cases dealing with child exploitation, to recover children—basically, keep people from doing harm to children.
>
> ....
>
> [THE STATE]: So in the [undercover operation], are you—are officers playing the roles of children?
>
> [SERGEANT RODRIGUEZ]: Yes.
>
> [THE STATE]: How is that helping to protect the children in general?
>
> [SERGEANT RODRIGUEZ]: Because when people are showing up to do something to a child, that's a child that they are not—you are keeping them from doing that to a

child. In these operations, we have also identified or removed 18 kids. We have located children through these operations.

1 VRP at 132–33. Jacobson did not object.

The prosecutor continued:

[THE STATE]: By the way, are the [undercover operations] going to continue into next year?

[SEARGEANT RODRIGUEZ]: They will continue as long as I can do them.

[THE STATE]: Are you planning to do more of them?

[SERGEANT RODRIGUEZ]: Yes.

[THE STATE]: Have they been successful in what you've been intending to do with them?

[SERGEANT RODRIGUEZ]: Absolutely.

2 VRP at 390. Jacobson did not object.

Jacobson contends that the prosecutor improperly vouched for Sergeant Rodriguez because the prosecutor's questions dealt with the Task Force protecting children and the success of the Task Force's undercover operations. However, the prosecutor's questions revolved around the goal of the Task Force's undercover operations and whether that goal was being fulfilled. The prosecutor did not refer to Sergeant Rodriguez's credibility and did not suggest that the Task Force's success in protecting children impacted his veracity. Moreover, the prosecutor's questions did not express a personal belief in the truthfulness of Sergeant Rodriguez's testimony.

In addition, we note that Jacobson contends that the Task Force's alleged outrageous conduct deprived him of his right to due process. Yet here, Jacobson argues that the very evidence necessary to evaluate the Task Force's conduct, and whether its motive was to protect the public, constitutes improper vouching. Evidence of law enforcement's motive is necessary in reviewing undercover operations and is not improper on its face. Accordingly, the prosecutor did not vouch for Sergeant Rodriguez,

and Jacobson fails to show that the prosecutor's statements were improper.

2018 WL 2215888, at *9–*11.

The prosecutor did not express a personal opinion about the veracity of the witnesses. Rather, the prosecutor presented relevant evidence about the undercover operation and then properly argued how the jury should consider the evidence in determining the credibility of witnesses. The state appellate court reasonably determined that the prosecutor did not engage in misconduct.

### 2.  State Court's Determination that the Prosecutor Did Not Engage in an Improper Voir Dire

Petitioner contends that "the prosecutor improperly used voir dire to influence the jury's resolution of the case." Dkt. 1-1, at 60. The Washington Court of appeals rejected this argument:

> B. *Conducting Improper Voir Dire*
>
> Jacobson also argues that the prosecutor committed misconduct by conducting improper voir dire. Jacobson specifically argues that the prosecutor conducted improper voir dire by educating the jury about Craigslist, introducing evidence regarding the undercover operation, Backpage.com, and *To Catch a Predator* that would not be introduced at trial, and suggesting that the jury must reach a unanimous decision. The State argues that Jacobson waived any challenge to the prosecutor's questions during voir dire because Jacobson failed to object to the prosecutor's questions and because Jacobson accepted the jury as constituted. We disagree with the State but nevertheless hold that the prosecutor's statements do not constitute misconduct.
>
> The purpose of voir dire is to enable the parties to learn the state of mind of the prospective jurors so as to determine whether any prospective jurors may be subject to a challenge for cause or the exercise of a peremptory challenge. *State v. Frederiksen*, 40 Wn. App. 749, 752, 700 P.2d 369 (1985). Jury voir dire should not be used to prejudice the jury for or against a party, to educate the jury as to the particular facts of the case, or to argue matters of law. 40 Wn. App. at 752.
>
> 1. *Waiver*

As an initial matter, the State argues that Jacobson waived any challenge to the prosecutor's questions during voir dire because Jacobson failed to object to the prosecutor's questions and accepted the jury as constituted. We disagree.

To support its argument, the State cites *State v. Elmore*, 139 Wn.2d 250, 985 P.2d 289 (1999). In *Elmore*, a capital defendant argued for the first time on appeal that the State's questions during voir dire deprived him of reliable sentencing. 139 Wn.2d at 277. The Washington Supreme Court determined that the defendant's argument was not properly raised on appeal because the defendant failed to object during voir dire and because the defendant accepted the jury as constituted and did not exhaust his peremptory challenges. 139 Wn.2d at 277. The court reasoned that voir dire is procedural, rather than constitutional, and cannot be raised for the first time on appeal. 139 Wn.2d at 277. In addition, the court determined that a defendant cannot show prejudice arising from the retention of a particular juror when he does not exercise all of his peremptory challenges and does not challenge the jury panel. 139 Wn.2d at 277–78.

Here, Jacobson did not object to the prosecutor's questions during voir dire. In addition, Jacobson did not exercise all of his peremptory challenges, and he did not challenge the jury panel.

Jacobson's argument is distinguishable from the challenge raised in *Elmore*. Although jury selection is procedural, prosecutorial misconduct affects a defendant's constitutional right to a fair trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703–04, 286 P.3d 673 (2012). And *Elmore* did not involve a prosecutorial misconduct challenge. *See Elmore*, 139 Wn.2d at 277–78. As discussed above, a defendant may raise prosecutorial misconduct for the first time on appeal. Because Jacobson raises his prosecutorial misconduct challenges to voir dire for the first time on appeal, we determine whether the prosecutor's conduct during voir dire was flagrant and ill-intentioned, and we do not decline to address Jacobson's arguments only because he neither exhausted his peremptory challenges nor objected to the jury panel before trial. *Emery*, 174 Wn.2d at 760–61.

2. *Educating the Jury*

Jacobson argues that the prosecutor conducted improper voir dire by educating the jury about Craigslist. We hold that the prosecutor's statements were not improper.

REPORT AND RECOMMENDATION - 27

During voir dire, the following exchange took place:

> [THE STATE]: ... has anyone been into the Casual
> Encounter section of Craigslist? ...
>
> ....
>
> [THE STATE]: ... I am going to ask some questions about
> the Casual Encounter section of Craigslist which for those
> of you who have never heard of it has dating services, sex
> services, nudity, all kinds of stuff.

1 VRP at 11–12. Jacobson did not object.

The prosecutor continued:

> What would you expect when you hear the name Casual
> Encounters? Sound permanent? ... Were you aware that you
> could find sex for sale on that website?
>
> ....
>
> ... Anyone surprised or not surprised to know that you can
> actually pay for sex or, for that matter, get paid for sex on
> Craigslist?

1 VRP at 14–15. Jacobson did not object.

In response to a question regarding whether Craigslist should be
responsible for the content posted on its website, a prospective
juror stated, "[Craigslist has] a lot of recording capabilities where
if you see inappropriate content, you flag it as inappropriate." 1
VRP at 16. The prosecutor then asked, "Does anybody know what
happens when you flag the ad?" 1 VRP at 18. A prospective juror
responded that when an ad is flagged, Craigslist will occasionally
take it off of its website. The prosecutor continued: "Someone out
there in the Internet reads the ad and decides whether or not [the]
complaint was legit. If it is, the ad is gone, and if it's not, it stays
up." 1 VRP at 18. Jacobson did not object.

Later, the prosecutor stated:

> What strikes me as one of my difficulties in this particular
> case is, is that—so one of the things I intend to do during
> this case is to present a detective who is going to walk
> people through the Craigslist Casual Encounter section, and

REPORT AND RECOMMENDATION - 28

I assure you it's going to be eyeopening. But I also am not surprised at all that not one person in here raised their hand when I said, "Have you been on the Casual Encounter section?" Because if you have, you are not going to raise your hand in a group full of people, especially that are all strangers, and say, "You know what? I saw a whole bunch of naked people who are offering sex for money, and oh, by the way, they were offering kids for sale, too," because it's kind of difficult to explain what you were doing there, right?

I mean, it's not like you just happened to .... This is casual encounters where you have to click and it actually says, "Are you over 18 to go in here?" ...

....

... I am telling you, you have to say, "Yes, I am over 18." And you know how you do that? Click. And it's just that simple. So I guess then here—so here is the question: How do I find the people, the person, if there is any, the people who have been on the Casual Encounter section of Craigslist and don't want to talk about it? How do I do that?

1 VRP at 59–60. Jacobson did not object.

During voir dire, the prosecutor asked a number of questions about Craigslist and its functions, as well as the content of the Casual Encounters section on the website. Although these questions were related to facts that would be presented at trial, the prosecutor's questions did not educate the jury about the *particular* facts at issue. The prosecutor did not use voir dire to inform the jury of the nature of the Craigslist ad Jacobson responded to and did not suggest that the jury should be prejudiced against Jacobson because of his use of Craigslist. As a result, Jacobson fails to show that the prosecutor's conduct during voir dire was improper.

3. *Introducing Facts Not Presented at Trial*

Jacobson also argues that the prosecutor conducted improper voir dire by introducing evidence regarding the undercover operation, Backpage.com, and "To Catch a Predator" that would not be introduced at trial. Br. of Appellant at 28. We hold that the prosecutor's statements were not improper.

During voir dire, the prosecutor asked the prospective jurors: "So has anybody ever ... actually been on Backpage.com? Heard of it? How many of you were aware of the recent news story that the CEO of Backpage was just arrested for running the largest online brothel in the world?" 1 VRP at 15. Jacobson did not object.

The prosecutor also asked, "How many of you watch shows like 20/20 and Dateline, those kind of things? ... [D]id you ever watch the ones, *To Catch a Predator*, the stings that were done?" 1 VRP at 22. The prosecutor continued:

> *To Catch a Predator*, those kind of things, how many of you have watched the shows where they set somebody up; they show up, and it's the police and they are arrested? ... Has anybody here ever seen one of those and thought to themselves, "God, I feel bad for that guy?"

1 VRP at 22. Jacobson did not object.

The prosecutor's questions regarding Backpage.com and "*To Catch a Predator*" did not pertain to facts particular to Jacobson's case, and the prosecutor did not use those questions to prejudice the jury against Jacobson. Instead, the prosecutor's questions were generalized inquiries about issues related to ads on Craigslist. It appears that the prosecutor asked these questions to ascertain the prospective jurors' points of view on these related issues and to determine whether any prospective jurors were subject to a challenge for cause or the use of a peremptory challenge. Therefore, Jacobson fails to show that the prosecutor's questions regarding Backpage.com and "*To Catch a Predator*" were improper.

2018 WL 2215888, at *11–*13 (footnote omitted).[4]

The state appellate court reasonably determined that the prosecutor's comments and questions during voir dire did not constitute misconduct.

---

[4] In the habeas petition, petitioner does not appear to challenge the state appellate court's determination that even assuming the prosecutor improperly suggested that a jury must reach a unanimous verdict, rather than being able to deadlock, the comment was not so egregious as to cause actual prejudice given that the jurors were properly instructed and jurors are presumed to follow their instructions. 2018 WL 2215888, at *13–*14. Regardless, the Court finds that the state court's determination was also reasonable on this question.

### 3.  State Court's Determination that the Prosecutor Did Not Misstate the Law or Minimize the Burden of Proof in Closing Argument

Petitioner contends "[t]he prosecutor committed misconduct that misstated the law and lessened the burden of proof when he argued that (i) the two charged counts—attempted rape of a child and attempted commercial sex abuse of a minor—substantially overlapped, (ii) attempted rape of a child is like attempted going to the movies, and (iii) the jury should "hold (Jacobson) responsible." Dkt. 1-1, at 63. The Washington Court of Appeals rejected these contentions:

1. *Similar Crimes*

Jacobson argues that the prosecutor misstated the law and minimized the State's burden of proof by arguing that attempted first degree rape of a child and attempted commercial sexual abuse of a minor are similar crimes. We hold that the prosecutor's argument was not improper.

"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). A person is guilty of commercial sexual abuse of a minor when the person "engage[s] in sexual conduct with a minor in return for a fee." Former RCW 9.68A.100(1)(c) (2013). "Sexual conduct" is defined as sexual intercourse, sexual contact, or both. Former RCW 9.68A.100(5).

During closing argument, the prosecutor stated:

Rape of a Child First Degree, the completed crime, requires sex, and by that I mean sexual intercourse with a child under 12 not married to the defendant and more than 24 months younger.

Commercial Sex Abuse of a Minor requires sexual conduct with a minor for a fee. So there is a lot of overlap between the two crimes. The age of the child; under 12 is a minor. Sexual contact, as you've just heard from the judge, is— sexual conduct is described as sexual intercourse or sexual contact....

Both of those two things, sexual intercourse and sexual contact, equal sexual conduct. So the only difference really

REPORT AND RECOMMENDATION - 31

1    between the completed crime is the element of "for a fee."

2    ...

     ....

3

4    So attempt to commit a crime, I am going to talk about
     those crimes together again because the elements are so
5    similar. For Attempted Rape of a Child 1, it's intent to
     commit the crime, a substantial step. For Commercial Sex
6    Abuse of a Minor, it's intent to commit the crime, a
     substantial step.

7    5 VRP at 781–83. Jacobson did not object.

8    The prosecutor's statements regarding first degree rape of a child
     and commercial sexual abuse of a minor did not amount to
9    misstatements of the law. The prosecutor explained that the
     elements of the two crimes are similar and distinguished those
10   elements. Moreover, the prosecutor's statements did not involve
     the State's burden of proof. Accordingly, Jacobson fails to show
11   that the prosecutor's statements were improper.

12   2. *Improper Analogy*

13   Jacobson also argues that the prosecutor misstated the law and
     minimized the State's burden of proof by arguing that attempted
14   first degree rape of a child and attempted commercial sexual abuse
     of a minor are like "go[ing] to the movies but being interrupted by
15   a phone call." Br. of Appellant at 32. We hold that the prosecutor's
     statements were not improper.

16

17   The trial court instructed the jury that a "substantial step" is
     "conduct that strongly indicates a criminal purpose and which is
     more than mere preparation." CP at 32. During closing argument,
18   the prosecutor provided:

19   So attempt to commit a crime, I am going to talk about
     those crimes again together because the elements are so
20   similar. ...

21   One of those elements isn't or shouldn't be disputed, and
     that is the element of a substantial step. ...

22

     ....

23

> If you put it in real-world terms, since none of you have
> been in a scenario like this defendant was in, if you put it in
> real-world terms, if you get together with your spouse or
> your children and you talk about going to a movie and you
> decide what movie you're going to go to, what theater
> you're going to go to, what time the movie is going to be,
> and then you get in your car and you drive to the movie;
> you have your money; you get some candy because you are
> not going to pay that kind of price at the movie theater and
> it's in your pocket; you get to the movie theater and the
> phone rings and you get called away and you can't go, did
> you intend to see a movie? That's what the law criminalizes
> in the attempted commission of a crime, a substantial step.

5 VRP at 782–84. Jacobson did not object.

> Jacobsen mischaracterizes the prosecutor's argument. The
> prosecutor did not equate the crimes to going to the movies but
> rather was specifically attempting to illustrate the term "substantial
> step." The prosecutor properly stated that taking a substantial step
> is an element of attempt. The prosecutor then used his movie
> analogy to give context to the term. The prosecutor's analogy
> conveyed that a substantial step required more than mere
> preparation and could be satisfied when conduct strongly indicated
> that a person intended to commit the act in question. The
> prosecutor's statements did not minimize the fact that the jury was
> required to find Jacobson guilty beyond a reasonable doubt. As a
> result, Jacobson fails to show that the prosecutor's statements were
> improper.

2018 WL 2215888, at *14–*16. The Court also rejected petitioner's argument that it was

improper for the prosecutor to state that the jury should "hold Jacobson responsible" for the

crimes:

> During rebuttal argument, the prosecutor stated:
>
> > [THE STATE]: [Jacobson] decided to have sex with an 11–
> > year–old girl, and he decided he was going to pay for it to
> > accomplish it. And now it's up to you folks to hold him
> > responsible for what he did.
> >
> > [JACOBSON]: Objection. That's not what they are
> > supposed to be doing.

REPORT AND RECOMMENDATION - 33

1

> THE COURT: Overruled....
>
> [THE STATE]: When the evidence is there, beyond a reasonable doubt, the just verdict is also what holds the defendant responsible and that's a verdict of guilty as charged.
>
> 5 VRP at 829. Jacobson did not object to the prosecutor's last statement.
>
> Viewing the prosecutor's statements in context and in light of the entire argument, the prosecutor argued that the evidence supported a guilty verdict. Stated another way, the prosecutor argued that the jury should hold Jacobson responsible and return guilty verdicts because the evidence showed beyond a reasonable doubt that Jacobson committed the crimes charged. As a result, the prosecutor argued that the jury should render a conviction based on the evidence. Consequently, the prosecutor did not urge the jury to convict Jacobson for reasons other than the evidence presented at trial, and the prosecutor's statements were not designed to arouse the jurors' passions and prejudices. Accordingly, Jacobson fails to show that the prosecutor's statements were improper.

2018 WL 2215888, at *16.

The Washington Court of Appeals reasonably determined that the prosecutor's comments did not misstate the law or minimize the prosecution's burden of proof.

### 4.  State Court's Determination that the Prosecutor Did Not Harmfully Appeal to the Jurors' Passions and Prejudices

Petitioner contends that the prosecutor committed misconduct by "[i]nflaming the furors' passions and prejudices throughout closing argument." Dkt. 1-1, at 66 (italics omitted). Specifically, petitioner argues that the prosecutor appealed to the jurors' passions and prejudices by discussing the "filth" on Craigslist and suggesting that one who discusses having sex with a child is willing to have sex with a child. The Washington Court of Appeals acknowledged that it was improper for the prosecutor to have referred to the "filth" on Craigslist but held that petitioner had waived this argument because he failed to show that the prosecutor's conduct was so flagrant and ill-intentioned that it caused actual prejudice:

REPORT AND RECOMMENDATION - 34

During opening argument, the prosecutor provided:

> The advertisements that [the Task Force is] using now are on Craigslist, and they are in the Casual Encounter section. ...

> The Casual Encounter section of Craigslist is filth like almost no other. ...

> ....

> Sergeant Rodriguez will tell you about some of the advertisements that they have come across when they do these operations because not only does Sergeant Rodriguez post the advertisements, but while he is responding to people who are responding to him, he is also looking up other ads, people who are offering up children, people who are offering up acts of bestiality, with animals, people offering up all kinds of stuff you cannot believe, and the filthier the better in some respects. And you'll see, as Sergeant Rodriguez walks you through Craigslist, the different type of advertisements.

1 VRP at 120–21. Jacobson did not object.

Later during opening argument, the prosecutor stated, "I am going to also apologize in advance for some of the evidence and some of the things you are going to see in this case because they are offensive content. Unfortunately, it's the defendant's actions that are bringing us here today." 1 VRP at 125–26. Jacobson did not object.

It was improper for the prosecutor to suggest that Jacobson's actions were the reason why the jury would hear evidence about bestiality and other "filthy" content on Craigslist. However, Jacobson does not argue that the prosecutor's statements had a substantial likelihood of affecting the jury's verdict, and he does not show that no instruction could cure any resulting prejudice. The prosecutor's statements were brief and made in isolation. At trial, the jury heard evidence regarding the content on Craigslist and the text messages between Jacobson and Kristl, and the trial court instructed the jury that "[y]ou must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference." CP at 25. Accordingly, Jacobson waived this issue on appeal because he fails

to show that the prosecutor's statements were flagrant and ill-intentioned.

2018 WL 2215888, at *17. The state appellate court acknowledged that it was improper for the prosecutor to imply that one who discusses having sex with a child is willing to have sex with a child but held that petitioner waived this issue on appeal because he failed to show that the prosecutor's conduct was so flagrant and ill-intentioned that it caused actual prejudice:

During closing argument, the prosecutor stated:

So what is important in this case is, what did the defendant know when he was having his conversations and when he drove over to this house?

A lot of our law is a gray area. There aren't many things that are black or white, one or the other, but I am going to suggest to you that there is one thing that is black and white, and that's this: An adult will either have sex with a child or will not. There isn't any gray area there. An adult either will or will not.

And I am going to go a little bit further than that and say that an adult that is willing to talk about having sex with a child falls into the category of an adult who will because there isn't any adult in our society to whom the idea of sex with a child is repulsive, who will talk about having sex with a child. That doesn't happen in the real world.

This defendant clearly was willing to talk about having sex with a child. He pursued that topic over the course of three dates. He saw it out and then he drove to the place where he thought it was going to happen, and that's what makes him guilty of both of these crimes.

5 VRP at 786–87. Jacobson did not object.

The prosecutor's argument suggested that because rape of a child is so repulsive, anyone who discusses having sex with a child will have sex with a child. The prosecutor then argued that because Jacobson discussed having sex with a child, the jury should infer that he would have sex with a child. The prosecutor's arguments did not refer to the specific evidence that demonstrated Jacobson's intent to commit attempted first degree rape of a child and

REPORT AND RECOMMENDATION - 36

1

2

3

> suggested that the jury should convict Jacobson for reasons outside
> of the evidence presented at trial. As a result, the prosecutor argued
> facts outside of the evidence, and his arguments were designed to
> arouse the jurors' passions and prejudices. Thus, these arguments
> were highly improper.

4

5

6

7

8

9

10

> Despite this, Jacobson fails to show that there is a substantial
> likelihood that the prosecutor's arguments affected the jury's
> verdict. The prosecutor later argued how evidence presented at trial
> showed that Jacobson was guilty of the charged crimes: Jacobson
> met at the agreed upon gas station at the agreed upon time and
> brought condoms, lubricant, and candy. Moreover, the trial court
> instructed the jury that it must disregard any statement or argument
> that was not supported by the evidence, and we presume that jurors
> follow the trial court's instructions. *Emery*, 174 Wn.2d at 766. And
> the prosecutor reminded the jury that it was Jacobson's actions that
> supported a guilty verdict. Accordingly, Jacobson fails to show
> that no instruction could cure any resulting prejudice. Therefore,
> Jacobson waived this issue on appeal because he fails to show that
> the prosecutor's conduct was flagrant and ill-intentioned.

11

12

13

14

15

16

2018 WL 2215888, at *17–*18. In sum, the Court of Appeals determined that it was improper for the prosecutor to have referred to "filth" on Craigslist and suggested that anyone who discusses having sex with a child will have sex with a child; it nonetheless held there was no actual prejudice because the statements were not so inflammatory that they could not be cured by proper jury instructions and with reference to the evidentiary record as a whole.

17

18

19

20

21

22

23

On federal habeas review, even if a petitioner can prove a trial error of constitutional magnitude, he or she is not entitled to relief unless the error actually prejudiced the defense. *See Brecht*, 507 U.S. at 637–39 ("The test . . . is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (internal citations omitted). A determination that the alleged error did not cause prejudice is an adjudication of the claim "on the merits" for purposes of 28 U.S.C. § 2254(d). *Davis v. Ayala*,

576 U.S. 257, 268 (2015). Thus, "when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 120 (2007) (emphasis in original) (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003)). A federal court may not grant relief "if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell*, 540 U.S. at 18. To obtain habeas relief, a petitioner must demonstrate both that an error resulted in actual prejudice under *Brecht*, and that the state decision was contrary to, or an unreasonable application of, clearly established Supreme Court law, or constituted an unreasonable determination of the facts under 28 U.S.C. § 2254(d). *Brown v. Davenport*, 142 S. Ct. 1510, 1517 (2022).

Here petitioner cannot demonstrate that it was incorrect, let alone objectively unreasonable, for the state court to find that there was no actual prejudice stemming from the prosecutor's improper reference to "filth" on Craigslist or suggestion that those who talk about sex with a child would have sex with a child. The state court examined in detail the ample evidence supporting both counts of conviction, including evidence establishing that petitioner requested to have oral and vaginal sex with a minor, asked for photographs of the minor, agreed on a meeting place, drove to the agreed upon meeting place, brought condoms and lubricant, and agreed to offer a gift card in exchange for sex. 2018 WL 2215888, at *21–*23; *see* 2018 WL 2215888, at *20 (discussing "overwhelming evidence" of guilt and why the three identified, improper statements by the prosecutor did not cumulatively affect the verdict). In this context, the state court determined that the prosecutor's improper statements were not so inflammatory that they could not be remedied through proper instructions, and that the improper comments did

not result in actual prejudice. The Court finds the state court's determination that the statements did not have a substantial and injurious effect or influence the jury's verdict was not objectionably unreasonable under *Brecht*. Furthermore, the Court finds the state court's handling of the challenged statements by the prosecutor was not contrary to, or an unreasonable application of, clearly established Supreme Court law, or an unreasonable determination of the facts under § 2254(d).

   **5. State Court's Determination that the Prosecutor Did Not Argue Facts Not in Evidence, Did Not Disparage the Defense, and Did Not Cumulatively Affect the Verdict**

Petitioner contends the prosecutor argued facts not in the evidence, such as noting that petitioner was arrested before reaching the "trap house" due to safety concerns and that there are generally three defenses in a criminal case; that the prosecutor disparaged the defendant, the defense, and defense counsel; and that numerous, improper statements cumulatively affected the fundamental fairness of the trial. Dkt. 1-1, at 68–70. The Washington Court of Appeals rejected petitioner's characterization of the prosecutor arguing facts outside of the evidence:

> A prosecutor commits misconduct by arguing facts not in evidence. *Glasmann*, 175 Wn.2d at 705. However, a prosecutor is permitted to draw reasonable inferences from the evidence.
>
> At trial, Sergeant Rodriguez stated that he did not feel comfortable having Knoll act in an undercover capacity because she had not received any undercover training. Sergeant Rodriguez stated that there were safety concerns in sending Knoll to meet Jacobson, so he was not going to have her leave the trap house. Sergeant Rodriguez also testified that Gasser looked too old to leave the trap house and meet Jacobson.
>
> During closing argument, the prosecutor stated:
>
> > And [the crime] was completed when [Jacobson] left the gas station and drove on his way to the residence before getting pulled over.

> The only reason that he got pulled over before he got to the house and walked in—because you heard Sergeant Rodriguez talk about, "We let them in with the undercover officer, tell them to take their shoes off, and we arrest them and we videotape that."
>
> That couldn't happen in this case because there wasn't a little girl, and this defendant was cautious. This defendant wanted to put eyes on that little girl. And the officers weren't going to take a chance of him pulling into Yakima Street, [Knoll] going outside without a child and having him take off and get into a more dangerous situation.

5 VRP at 784. Jacobson did not object.

> Sergeant Rodriguez's testimony established that there were safety concerns in allowing Knoll and Gasser to meet Jacobson either at the gas station or at the trap house. The prosecutor then inferred from the evidence that a more dangerous situation could occur if law enforcement permitted Jacobson to enter the trap house. As a result, Jacobson fails to show that the prosecutor argued facts not in evidence and that the prosecutor's statements were improper.

2018 WL 2215888, at *18–*19.

The state appellate court also rejected petitioner's claim the prosecutor's argument disparaged the defense:

> It is misconduct for a prosecutor to disparagingly comment on defense counsel's role or impugn defense counsel's integrity. *Thorgerson*, 172 Wn.2d at 451. However, prosecutors may properly argue that the evidence does not support the defense's theory of the case. 172 Wn.2d at 465.
>
> At trial, Jacobson testified that when he responded to the Task Force's Craigslist ad, he believed he was agreeing to meet with an adult woman who would act like an 11–year–old girl. Jacobson testified that he believed the term "no RP" in the Craigslist ad meant "no real people." 4 VRP at 567.
>
> During closing argument, the prosecutor stated,
>
>> Let me say at the outset of this that I am going to use the word "I" multiple times in this closing argument. It is not my personal opinion. My personal opinion has no place in

REPORT AND RECOMMENDATION - 40

this case. So when I use the word "I," I am not telling you what to think. I am telling you what the evidence shows and what the law shows.

5 VRP at 780. The prosecutor then responded to Jacobson's trial testimony:

It wasn't enough for the defendant that he got a picture of Lisa. He then asked—and I am going to suggest to you that when the defendant's cross-examination went worse for him was when he tried to explain to you why he needed a picture of the mom and the girl together because if the mom is pretending to be the girl, that's not possible....

He then wanted the girl brought to the gas station with the mother so he could put eyes on them and determine they were real.

I am going to suggest to you that the defendant's explanation of what "no RP" means was a couple of other initials, one of which is a B. But you know what? BS. It's not possible that "no RP" means no real person.

....

But the point is that the no RP, the no real people, the no role play, all of that is a sidetrack to what was actually going on here because the defendant's words and actions are what demonstrated his intent.

5 VRP at 791–92. Jacobson did not object.

Although the prosecutor's statement that Jacobson's explanation of the meaning of "no RP" was strong, the statement was not a comment on defense counsel's role and did not impugn defense counsel's integrity. Instead, the prosecutor permissibly argued that the evidence presented at trial, and not his personal opinion, did not support Jacobson's testimony. It is not improper for a prosecutor to argue that evidence does not support the defense's theory. *Thorgerson*, 172 Wn.2d at 465. Accordingly, Jacobson fails to show that the prosecutor's statements were improper.

2018 WL 2215888, at *19–*20.

1    The state court also rejected petitioner's claim the prosecutor's comments and conduct,

2    viewed cumulatively, deprived him of a fair trial:

3    The cumulative error doctrine applies when a trial is affected by
       "several trial errors that standing alone may not be sufficient to

4    justify reversal but when combined may deny a defendant a fair
       trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). To

5    determine whether cumulative error requires reversal of a
       defendant's conviction, we must consider whether the totality of

6    circumstances substantially prejudiced the defendant. The totality
       of the circumstances do not substantially prejudice the defendant

7    where the evidence is overwhelming against the defendant. *In re*
       *Pers. Restraint of Cross*, 180 Wn.2d 664, 691, 327 P.3d 660

8    (2014). Additionally, the cumulative error doctrine does not apply
       when there are no errors or where the errors are few and have little

9    or no effect on the trial's outcome. *State v. Weber*, 159 Wn.2d 252,
       279, 149 P.3d 646 (2006).

10

11   As discussed above, Jacobson identifies three trial errors—the
       prosecutor's improper suggestion that one who discusses having

12   sex with a child is willing to have sex with a child, improper
       statement that the jury must reach a unanimous decision, and

13   improper discussion regarding the filth on Craigslist. Considering
       these errors together, Jacobson fails to show that their combined

14   effect deprived him of a fair trial. The prosecutor's remarks had
       little to no effect on the outcome of Jacobson's trial because they

15   were brief and made in isolation. The trial court instructed the jury
       that it must reach its decision based on the evidence and that it

16   should disregard any of the prosecutor's statements that were not
       supported by the evidence.

17   Moreover, overwhelming evidence supports Jacobson's
       convictions. Jacobson exchanged a number of text messages with

18   undercover officers and clearly stated that he wished to have both
       oral and vaginal intercourse with an 11–year–old girl, Lisa.

19   Jacobson asked for several pictures of Lisa, and he agreed to
       provide a gift card as compensation for having sexual contact with

20   Lisa. In addition, Jacobson drove to the agreed upon gas station
       before he was to meet Lisa. Jacobson was arrested outside the gas

21   station with condoms, lubricant, and candy on his person—as the
       undercover officers requested.

22

23   Looking to the errors in the context of the entire record, we
       conclude that Jacobson failed to meet his burden in proving that

1
2

the cumulative effect of the prosecutor's statements substantially
prejudiced him and thus deprived him of a fair trial.

2018 WL 2215888, at *20–*21.

3

4       The Court finds that, in rejecting petitioner's claim about prosecutorial misconduct in

5   introducing facts outside of the evidence, disparaging the defense, and cumulatively impacting

6   the verdict, the Washington Court of Appeals did not decide in a manner contrary to, or

7   involving an unreasonable application of, clearly established law, and did not reach an

8   unreasonable determination of the facts in light of the record.

9       **C.  Ground 6: Outrageous Government Conduct**

10      In Ground 6, petitioner contends "The police conduct during the 'net nanny' sting

11  operation, which lead to Petitioner[']s arrest, was so outrageous that it violated Jacobson's due

12  process rights." Ground 6 lacks merit.

13      The Supreme Court has suggestedt the Court "may someday be presented with a situation

14  in which the conduct of law enforcement agents is so outrageous that due process principles

15  would absolutely bar the government from invoking judicial process to obtain." *United States v.*

16  *Russell*, 411 U.S. 423, 431–32 (1973). The Supreme Court has not, however, found such a

17  situation that would warrant habeas relief. *See, e.g.*, *Russell*, 411 U.S. at 432; *Hampton v. United*

18  *States*, 425 U.S. 484 (1976); *United States v. Payner*, 447 U.S. 727 (1980). The Ninth Circuit

19  recognizes that a defendant may raise a due process-based outrageous government conduct

20  defense to a criminal indictment. *United States v. Bogart*, 783 F.2d 1428, 1432–33 (9th Cir.

21  1986), *petition for rh'g granted and case remanded in non-relevant part, United States v.*

22  *Wingender,* 790 F.2d 802 (9th Cir.1986). Defining what government conduct would be so

23  extreme as to constitute a due process violation has, however, been elusive. The Ninth Circuit

has characterized outrageous government conduct by various highly restrictive terms, such as

1    "most narrow," "shocking to the universal sense of justice," "only the most intolerable

2    government conduct," and "slim category." *Bogart*, 783 F.2d at 1434–35. Only one prior Ninth

3    Circuit decision has found circumstances falling into this category, *Green v. United States*, 454

4    F.2d 783 (9th Cir. 1971), which may be an entrapment rather than an outrageous government

5    conduct case. *Green* predates *Russell* and *Hampton*, so it does not reflect the current law of the

6    circuit on outrageous government conduct.

7           The Washington Court of Appeals nonetheless analyzed petitioner's Ground 6 due

8    process outrageous conduct claim with reference to how such government conduct is evaluated

9    in the Washington courts:

10                The concept of outrageous conduct is founded on the principle that
                 "the conduct of law enforcement ... may be 'so outrageous that due
11               process principles would absolutely bar the government from
                 invoking judicial processes to obtain a conviction.' " *State v.*
12               *Lively*, 130 Wn.2d 1, 19, 921 P.2d 1035 (1996) (quoting *United*
                 *States v. Russell*, 411 U.S. 423, 431–32, 93 S. Ct. 1637, 36 L.Ed.
13               2d 366 (1973) ). Whether law enforcement has engaged in
                 outrageous conduct is a question of law that we review de novo.
14               130 Wn.2d at 19; *see State v. Mullin–Coston*, 152 Wn.2d 107, 114,
                 95 P.3d 321 (2004).
15
                 To determine whether law enforcement's conduct violated due
16               process, we must assess the conduct based on the totality of the
                 circumstances. *Lively*, 130 Wn.2d at 21. Law enforcement's
17               conduct is outrageous and violates due process only when the
                 conduct is so shocking that it violates fundamental fairness and the
18               universal sense of fairness. 130 Wn.2d at 19. A claim based on
                 outrageous conduct requires the defendant to demonstrate more
19               than mere flagrant law enforcement conduct. 130 Wn.2d at 20.
                 "Public policy allows for some deceitful conduct and violation of
20               criminal laws by [law enforcement] in order to detect and eliminate
                 criminal activity." 130 Wn.2d at 20. Outrageous conduct is not to
21               be invoked each time law enforcement acts deceptively. 130
                 Wn.2d at 20. Instead, dismissal based on outrageous law
22               enforcement conduct is reserved for only the most egregious
                 circumstances. 130 Wn.2d at 20.
23

REPORT AND RECOMMENDATION - 44

In evaluating whether law enforcement's conduct violated due process, we consider several factors, including: (1) "whether [law enforcement's] conduct instigated a crime or merely infiltrated ongoing criminal activity"; (2) "whether the defendant's reluctance to commit a crime was overcome by pleas of sympathy, promises of excessive profits, or persistent solicitation"; (3) "whether [law enforcement] controls the criminal activity or simply allows for the criminal activity to occur"; (4) "whether [law enforcement's] motive was to prevent crime or protect the public"; and (5) "whether [law enforcement's] conduct itself amounted to criminal activity or conduct 'repugnant to a sense of justice.' " 130 Wn.2d at 22 (citations omitted) (quoting *People v. Isaacson*, 44 N.Y.2d 511, 521, 406 N.Y.S.2d 714, 378 N.E.2d 78 (1978)).

Here, law enforcement posted an ad on Craig[s]list, posing as Kristl, a mother with three minor children. Jacobson responded to the ad that same day and expressed an interest in Kristl's 11–year–old daughter, Lisa. Jacobson stated that he was interested in both oral and vaginal sex with Lisa. Kristl asked if Jacobson could bring gifts when he met with Lisa, and Jacobson answered in the affirmative.

Later, the following exchange took place:

> [JACOBSON]: I just drove by the address you gave me for the [gas station], and you gave me the address to a home residential neighborhood. So sorry, this is all seeming to be something it's really not.
>
> ....
>
> [KRISTL]: im done with you sorry to mich hassle if you change your mind you know what to do
>
> [JACOBSON]: They wind up having time tomorrow during the day, may I message you? Would you be available daytime tomorrow? ...
>
> [KRISTL]: no way. yo know what the deal is i will find someone else
>
> [JACOBSON]: Ok.
>
> [KRISTL]: im [upset] with you [now] i have to tell her you arent coming. I [shouldn't] have let her [talk] to you

REPORT AND RECOMMENDATION - 45

[JACOBSON]: Ugh ... I feel bad. Would there be any harm in me coming over tonight still?

....

[KRISTL]: are you still good with gifts? ... what did [you] have in mind ....

[JOHN]: A gift card, that can be used for any purpose.

Ex. 4, at 11–14. Undercover officers portrayed Lisa and Kristl throughout the operation, and Jacobson spoke with both officers.

Looking to the totality of the circumstances, Jacobson fails to show that law enforcement's conduct during the undercover Craigslist operation was so outrageous that it violated due process. Although law enforcement initially posted the Craigslist ad, law enforcement's ad merely infiltrated ongoing criminal activity and did not instigate it. Instead, Jacobson instigated criminal activity by responding to the ad and requesting sexual contact with a child. In addition, law enforcement did not engage in criminal conduct during the undercover operation. Rather, law enforcement acted deceptively—posing as a mother who sought compensation for Jacobson's sexual contact with her 11–year–old daughter. Moreover, law enforcement did not control the criminal activity and instead allowed criminal activity to occur.

Jacobson initiated discussions about the crime, controlled the extent of the crime, and arranged for the crime to take place. Although Jacobson appeared reluctant to meet Kristl at the gas station when he drove to an incorrect address, law enforcement did not overcome Jacobson's reluctance with pleas of sympathy or persistent solicitation. Jacobson was the first to mention meeting with Kristl and Lisa the following day. Law enforcement's message that "im upset with you [now] I have to tell her you arent coming," did not serve to overcome any reluctance—Jacobson had already initiated continuing the criminal activity. Ex. 4, at 11. Accordingly, viewing the totality of the circumstances, law enforcement's conduct during the undercover operation was not so shocking that it violated fundamental fairness and the universal sense of fairness. Thus, law enforcement's conduct did not violate due process.

2018 WL 2215888, at *7–*8.

1    The Court cannot say that the state appellate court's decision to reject petitioner's

2    outrageous conduct claim was incorrect, let alone that it was contrary to, or an unreasonable

3    application of, clearly established Supreme Court authority, or an unreasonable determination of

4    the facts in light of the record. In *United States v. Simpson*, 813 F.2d 1462 (9th Cir. 1987), the

5    Ninth Circuit held the government informant's "use of sex to deceive him into believing she was

6    an intimate friend just so she could lure him into selling heroin . . . was not so shocking as to

7    violate the due process clause." *Id*. at 1465. If using sex to seduce a person into committing a

8    crime is not so "outrageous that due process principles would absolutely bar the government

9    from invoking judicial processes to obtain a conviction," then neither is the police using a

10    Craigslist advertisement to attract petitioner to respond and to request sexual contact with a

11    child. *Id.* at 1464 (quoting *Russell*, 411 U.S. at 431–32).

## CERTIFICATE OF APPEALABILITY

12

13    If the district court adopts the Report and Recommendation, it must determine whether a

14    certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254

15    Cases in the United States District Courts ("The district court must issue or deny a certificate of

16    appealability when it enters a final order adverse to the applicant."). A COA may be issued only

17    where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28

18    U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason

19    could disagree with the district court's resolution of his constitutional claims or that jurists could

20    conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

21    *El v. Cockrell*, 537 U.S. 322, 327 (2003).

22    The Court recommends petitioner not be issued a COA. No jurist of reason could

23    disagree with this Court's evaluation of his habeas claims or would conclude that the issues

presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

### OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, Petitioner should not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **July 31, 2023.** The Clerk should note the matter for **August 4, 2023**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 10th day of July, 2023.

 

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 48